# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

IN RE:

ROBERT L. SCHWARTZ,

      Debtor.

Case Nos. 11-13160, 11-13161
Bankruptcy Case No. 10-71142

_____/

PAMELA LIGGETT,

      Appellant,

v.

ROBERT L. SCHWARTZ,

      Appellee.

_____/

## OPINION AND ORDER
## IN CASE NO. 11-13161:
## DISMISSING APPEAL FOR LACK OF JURISDICTION
## AND
## IN CASE NO. 11-13160:
## REVERSING THE BANKRUPTCY COURT'S DECISION THAT DEBTOR IS ELIGIBLE FOR CHAPTER 13 RELIEF, VACATING THE BANKRUPTCY COURT'S "ORDER CONFIRMING PLAN," AND REMANDING FOR FURTHER PROCEEDINGS

      Appellee Robert Schwartz and Appellant Pamela Liggett are former spouses who have been embroiled in highly acrimonious[1] legal disputes at least since Schwartz filed for divorce more than twelve years ago.  In this manifestation of their protracted conflict, Liggett seeks to prevent Schwartz from entering Chapter 13 bankruptcy.  After Schwartz filed for bankruptcy in October 2010, Liggett alone among his creditors lodged a

---

[1] Schwartz's brief, for example, casts Liggett's appeal in this case as constituting little more than a "part and parcel of . . . her continued efforts to cause the Appellee emotional and financial grief."  (Appellee Br. 3.)

plethora of objections in the bankruptcy court. She also entered a claim against him that exceeded $500,000 at its high-water mark. Despite Liggett's efforts, the bankruptcy court eventually confirmed Schwartz's reorganization plan and reduced Liggett's claim to just over $60,000. Liggett now seeks review of these decisions.

While the court shares the bankruptcy court's seeming bewilderment at Liggett's all-out effort to thwart Schwartz's bankruptcy petition, the court nevertheless finds merit in one of Liggett's numerous arguments: in determining Schwartz's eligibility for Chapter 13 relief, the bankruptcy court should have included Schwartz's second mortgage in the calculation of his unsecured debt. When this amount is accounted for, Schwartz's unsecured debts exceed the statutory limit set forth in 11 U.S.C. § 109(e). Accordingly, the court must reverse the bankruptcy court's confirmation of Schwartz's reorganization plan.

## I. BACKGROUND

Litigation between Schwartz and Liggett dates to 1999, when Schwartz filed for divorce in the Oakland County Circuit Court. On November 20, 2000, the circuit court entered a judgment of divorce dividing the couple's assets and liabilities. Schwartz and Liggett appear still to be sorting out their various obligations under the divorce judgment. They had been in arbitration over these lingering issues for more than a year when, on October 8, 2010, Schwartz filed for bankruptcy under Chapter 13 of the Bankruptcy Code.

By statute, an individual may become a debtor under Chapter 13 only if he has noncontingent, liquidated, unsecured debts of less than $360,475 and noncontingent, liquidated, secured debts of less than $1,081,400. 11 U.S.C. § 109(e). In his petition,

Schwartz scheduled unsecured debts of $359,059—just below the cut-off—and secured debts of $447,835.  Included in the total of Schwartz's secured debts was the entire obligation owing on two mortgages secured by his personal residence.  Even though Schwartz reported that both mortgages were undersecured, with the second mortgage wholly unsecured in the amount of $137,707, he did not factor any of the mortgage debt into the calculation of his unsecured debt.

Liggett entered the bankruptcy proceedings on December 27, 2010, when she filed an objection to the confirmation of Schwartz's Chapter 13 plan and submitted a proof of claim for $82,859.24.  Regarding the former, Liggett argued, among other things, that the debts reflected in her proof of claim put Schwartz over the limit for unsecured debts under § 109(e).  Schwartz objected to Liggett's proof of claim, though he acknowledged that he did owe Liggett a one-half share of an IRA pursuant to the judgment of divorce.  The bankruptcy court, opting to first decide whether Schwartz was eligible for Chapter 13 relief, solicited briefing on the issue.  Ultimately, the bankruptcy court issued a written opinion holding that Schwartz had met the requirements of § 109(e).  Finding that Schwartz had filed his petition in good faith, the bankruptcy court concluded that his omission of Liggett's legitimate claims was honest error given the parties' long-running dispute over their respective obligations after the divorce.

In response to this ruling, Liggett filed a motion for reconsideration, amended her proof of claim to reflect a debt of $535,973.05, and initiated an adversary proceeding against Schwartz to obtain a non-dischargeable judgment in this amount.  After denying the motion for reconsideration, the bankruptcy court held a confirmation hearing on June 30, 2011.  There, the bankruptcy court largely sustained Schwartz's objections to

Liggett's original proof of claim, but it did allow the portion of the claim attributable to the IRA in an amount to be determined through the adversary proceeding. Liggett, represented by new counsel, also took the opportunity to reiterate many of her objections to Schwartz's confirmation under Chapter 13. Over the bankruptcy court's insistence that the § 109(e) question had already been resolved, Liggett's counsel pointed out, apparently for the first time, the discrepancy in Schwartz's reporting of his unsecured second mortgage as *secured* debt. The bankruptcy court nevertheless confirmed Schwartz's reorganization plan, both at the hearing and in a written order entered on July 8, 2011. The court also issued a written order on July 18, 2011, allowing Liggett's original proof of claim in the amount of $38,061.37, based on a June 2000 account statement of the IRA submitted by Liggett. Liggett appealed both orders to this court, which now considers the matter on the parties' consolidating briefing of the two appeals.[2]

In the meantime, proceedings continued in the bankruptcy court. On July 13, 2011, Schwartz filed an objection to Liggett's amended proof of claim. Two days later, he filed a motion to dismiss the adversary proceeding. After a hearing on September 13, 2011, the court granted the motion to dismiss. The bankruptcy court then took up Liggett's amended proof of claim, ordering the parties to provide additional briefing and documentation on the value of Liggett's share of the IRA. In a January 30, 2012, opinion that superceded the July 18, 2011, order on Liggett's original proof of claim, the

---

[2]Although oral argument was not heard on this matter, the court determines it to be unnecessary. *See* E.D. Mich. LR 7.1(f)(2).

bankruptcy court determined that Liggett had an unsecured claim against Schwartz in the amount of $60,485.10.[3]

## II.  JURISDICTION AND STANDARD OF REVIEW

Although the parties agree that the court has jurisdiction over the two instant appeals as "appeals of right" under 28 U.S.C. § 158(a)(1), *see* Fed. R. Bankr. P. 8001(a), the court has an independent obligation to ensure that it does, in fact, have subject-matter jurisdiction, *see Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) ("[I]t is beyond question that federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists.").  28 U.S.C. § 158(a)(1) vests the district courts with jurisdiction over appeals from "final judgments, orders, and decrees" of the bankruptcy court.  In the bankruptcy context, "this finality requirement is considered 'in a more pragmatic and less technical way.'"  *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir. 1996) (quoting *Cottrell v. Schilling* (*In re Cottrell*), 876 F.2d 540, 541-42 (6th Cir. 1989)).  Any order "'finally dispos[ing] of discrete disputes within the larger case'" may be appealed immediately.  *Id.* (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

This flexible standard is enough to confer jurisdiction over Liggett's appeal of the July 8, 2011, order confirming Schwartz's Chapter 13 plan.  However, the same cannot

---

[3]Liggett also appealed the bankruptcy court's order dismissing the adversary proceeding and order determining the amount of her claim.  These appeals are currently pending as case numbers 11-14834 and 12-11055, but they are not presently before the court.

be said of the appeal of the July 18, 2011, order on Liggett's original proof fo claim. Orders determining a debtor's objection to a proof of claim are final when they "leave nothing more for the bankruptcy court to do" with respect to that issue. *In re Ford*, 194 B.R. 583, 587 (S.D. Ohio 1995) (internal quotation marks omitted); *see also Morton v. Morton* (*In re Morton*), 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003). The July 18, 2011, order clearly did not settle the amount to which Schwartz was indebted to Liggett. When the bankruptcy court entered that order, the original proof of claim had already been amended by Liggett's second proof of claim, an adversary proceeding regarding the claim was pending, and the bankruptcy court had stated at the June 30, 2011, confirmation hearing that Liggett's claim would be determined in the course of these other proceedings. The January 30, 2012, opinion and January 31, 2012, order that finally settled the amount of Liggett's claim confirmed that they superceded the July 18, 2011, order. Under these circumstances, the July 18, 2011, order is not a final judgment, order or decree under § 158(a)(1), and the court will dismiss Liggett's appeal from that order.[4]

As for the remaining appeal from the plan confirmation, the court reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error.

---

[4]Because the January 2012 opinion and order explicitly superceded the July 18, 2011, order, it could also be said that the appeal from the earlier order is moot and not reviewable. Under Article III of the Constitution, "[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). A case becomes moot when, as here, "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

*B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 935-36 (citing *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004)).

### III.  DISCUSSION

Liggett advances a number of alleged errors in the bankruptcy court's confirmation of Schwartz's Chapter 13 plan, arguing that the plan does not comply with a number of provisions in the Bankruptcy Code, *see* 11 U.S.C. § 1325(a)(1), it was not proposed in good faith, *see id.* § 1325(a)(3), and Schwartz would not be able to fully fund it, *see id.* § 1325(a)(6).  The court's consideration begins—and ends—with Liggett's contention that Schwartz does not qualify for Chapter 13 relief due to his unsecured second mortgage.  If Liggett is correct that the $137,707 owed on the second mortgage must be factored into Schwartz's unsecured debt, Schwartz clearly had unsecured debts of much more than the $360,475 statutory limit set forth in § 109(e).

As an initial matter, Schwartz argues that Liggett should be foreclosed from raising this contention because she did not argue it in the bankruptcy court.  *See Hood v. Tenn. Student Assistance Corp.* (*In re Hood*), 319 F.3d 755, 760 (6th Cir. 2003).  Schwartz has a point.  Liggett did not bring up Schwartz's undersecured second mortgage in her written objection to plan confirmation or the subsequent briefs she submitted on Schwartz's § 109(e) eligibility.  It was not until the June 30, 2011, confirmation hearing that her counsel voiced this particular objection and, even then, it was initially to assert that the proposed plan impermissibly discriminated among Schwartz's unsecured creditors.  *See* 11 U.S.C. § 1322(b)(1).  Nevertheless, the issue was raised in the bankruptcy court.  (*See* Hr'g Tr. 24, June 30, 2011, Bankr. Dkt. # 118 ("[DEFENSE COUNSEL]: If [the second mortgage is] a wholly unsecured claim in the

7

amount of $137,000, that exceeds the dollar limitations of Chapter 13 . . . .").) And, more importantly, the bankruptcy court ruled on it. (*See id.* at 23-24.) In the court's view, Liggett has effectively preserved her claim for appeal.

Turning to the merits, the court's discussion begins with *Comprehensive Accounting Corp. v. Pearson* (*In re Pearson*), 773 F.2d 751 (6th Cir. 1985), in which the Sixth Circuit set forth the standards that should guide a court's inquiry into whether a debtor qualifies for Chapter 13 relief under § 109(e). To determine this question, "a court should rely primarily upon the debtor's schedules[,] checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing." *Id.* at 756. The court should not hold a hearing on the merits of a claim in order to compute a debtor's Chapter 13 eligibility, as "the fact that evidence must be taken to determine the amount of the claim indicates that until then, the claim was unliquidated." *Id.* The inquiry is analogous to the court's determination of the amount-in-controversy in diversity jurisdiction cases. The amounts claimed in good faith by the relevant party will control "unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Id.* at 757 (citing *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-90 (1938)). Eligibility is determined at the time of filing, and "[s]ubsequent events do not divest the court of jurisdiction." *Id.* (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)).

In *Pearson*, the court noted but did not rule on the issue now before the court: how to evaluate a debtor's designation of a debt as secured or unsecured, particularly when a secured debt is identified by the debtor as undersecured or, as in this case, fully unsecured. *Id.* at 755-56. Section 506 of the Bankruptcy Code speaks to the

8

classification of claims for the purpose of determining whether a creditor has a secured debt against the bankruptcy estate:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . , and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1). Liggett asserts that this framework should apply in the § 109(e) inquiry, such that a debtor's estimate of his undersecured debt should be included in the calculation of his total unsecured debt. Schwartz disagrees. In his view, the amount to which an undersecured debt is unsecured cannot be determined until the bankruptcy court holds a valuation hearing, which is a post-petition event that cannot affect a debtor's Chapter 13 eligibility. Prior to such a hearing, an undersecured debt may be counted as a wholly secured debt under § 109(e), since any unsecured portion of the debt is necessarily unliquidated before the value of the collateral is determined.

While the bankruptcy court agreed with Schwartz, the overwhelming majority of courts to consider this issue have adopted Liggett's position that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes. This includes all four courts of appeal to take up the question, as well as a host of bankruptcy courts. *See, e.g.*, *Scovis v. Henrichsen* (*In re Scovis*), 249 F.3d 975, 983 (9th Cir. 2001); *Brown & Co. Secs. Corp. v. Balbus* (*In re Balbus*), 933 F.2d 246, 247 (4th Cir. 1991); *Miller v. United States*, 907 F.2d 80, 82 (8th Cir. 1990); *In re Day*, 747 F.2d 405, 406-07 (7th Cir. 1984); *United States v. Dallas*, 157 B.R. 912, 913 (S.D. Ala. 1992);

9

*United States v. Edmonston*, 99 B.R. 995, 999 (E.D. Cal. 1989); *Soderlund v. Cohen* (*In re Soderlund*), 236 B.R. 271, 274-75 (B.A.P. 9th Cir. 1999); *In re Bernick*, 440 B.R. 449, 450-51 (Bankr. E.D. Va. 2010); *In re Smith*, 419 B.R. 826, 831-32 (Bankr. C.D. Cal. 2009); *In re Werts*, 410 B.R. 677, 684-85 (Bankr. D. Kan. 2009); *In re Groh*, 405 B.R. 674, 675-76 (Bankr. S.D. Cal. 2009); *In re Weiser*, 391 B.R. 902, 908 (Bankr. S.D. Fla. 2008); *In re Grenchik*, 386 B.R. 915, 917-19 (Bankr. S.D. Ga. 2007); *In re Buis*, 337 B.R. 243, 248 (Bankr. N.D. Fla. 2006); *In re Harrold*, 257 B.R. 916, 916-17 (Bankr. W.D. Ark. 2000); *In re Prosper*, 168 B.R. 274, 278 (Bankr. D. Conn. 1994); *In re Mason*, 133 B.R. 877, 878-79 (Bankr. N.D. Ohio 1991); *In re Rifkin*, 124 B.R. 626, 627-29 (Bankr. E.D.N.Y. 1991); *In re Jerome*, 112 B.R. 740, 741-42 (Bankr. S.D.N.Y. 1990); *In re Bos*, 108 B.R. 740, 741-42 (Bankr. D. Mont. 1989); *In re McClaskie*, 92 B.R. 285, 286-87 (Bankr. S.D. Ohio 1988); *In re Clark*, 91 B.R. 570, 573 (Bankr. D. Colo. 1988); *In re Martin*, 78 B.R. 928, 929-30 (Bankr. S.D. Iowa 1987); *In re Potenza*, 75 B.R. 17, 19 (Bankr. D. Nev. 1987); *In re Bobroff*, 32 B.R. 933, 935-36 (Bankr. E.D. Pa. 1983); *In re Ballard*, 4 B.R. 271, 274-75 (Bankr. E.D. Va. 1980). But see *In re Edmonston*, 99 B.R. 993, 993-95 (Bankr. E.D. Cal. 1988), *abrogated by U.S. v. Edmonston*, 99 B.R. at 999; *In re Morton*, 43 B.R. 215, 218-20 (Bankr. E.D.N.Y. 1984); *In re King*, 9 B.R. 376, 377-78 (Bankr. D. Or. 1981).[5]

---

[5] At least one court adopting the majority position has held that undersecured debts that are even partially secured by a lien on the debtor's personal residence are counted as secured debts, given that the bankruptcy court cannot modify such liens under 11 U.S.C. § 1322(b)(2). *Smith*, 419 B.R. at 832; *see also Soderlund*, 236 B.R. at 275 n.5. While Schwartz's second mortgage is secured by his personal residence, this potential exception does not apply here. In scheduling his two mortgages, Schwartz reported that the first was undersecured and the second was completely unsecured. Because the lien associated with the second mortgage had no value, the holder of the

With this fairly overwhelming convergence of thinking, the court is not inclined to disagree. The few bankruptcy courts that have taken a contrary position rely upon a distinction between the term "claim" used in § 506(a)(1) and the term "debt" used in § 109(e). *See Morton*, 43 B.R. at 220. The majority view, in contrast, "avoids the elevation of form over substance." *Rifkin*, 124 B.R. at 629. If courts cannot account for the value of the collateral securing a debt, a potential debtor could easily circumvent the debt limitations of § 109(e) merely by granting his unsecured creditors a security interest in property with little or no value. *Day*, 747 F.2d at 407. Bifurcating undersecured debts allows for a more realistic evaluation of a debtor's Chapter 13 eligibility, as it provides a closer approximation of how his claims are likely to be treated under the debtor's reorganization plan.

Nor does the court's adoption of the majority position defy *Pearson's* mandate that post-petition events cannot defeat eligibility, as Schwartz argues and the bankruptcy court held. Just as a court relies on the debtor's good-faith estimation of his debts, so too can it rely on his estimation of the value of his secured property. Here, a valuation hearing is not required to see that Schwartz is ineligible for Chapter 13 relief. The court need look no further than his schedules. He lists a first mortgage of $250,959 and a second mortgage of $137,707 secured by property valued at $225,000. Adding the entire, unsecured balance of the second mortgage to Debtor's scheduled unsecured debt puts him far beyond the $360,475 limit. If there were a good faith dispute as to the

---

second mortgage has only an unsecured claim that can be modified notwithstanding § 1322(b)(2). *Lane v. W. Interstate Bancorp* (*In re Lane*), 280 F.3d 663, 669 (6th Cir. 2002). Thus, the wholly unsecured second mortgage should be counted as unsecured debt. *See Smith*, 419 B.R. at 831-32.

11

value of a debtor's secured property or, as in *Pearson*, the secured status of a debt, *see* 773 F.2d at 755, there might be a different result. "[A]bsolute certainty" as to the amount of a debtor's secured and unsecured debts "is not and cannot be expected." *Id.* at 757. But when a debtor's unsecured debts, including those arising from undersecured obligations, exceed the § 109(e) limit on the face of a debtor's schedules, he should be deemed ineligible for Chapter 13 relief. *See McClaskie*, 92 B.R. at 286-87.

Applying these principles in Schwartz's case has the unfortunate consequence of nullifying more than a year of the bankruptcy court's work on this case. Further, in these days of greatly depreciated property values, the majority approach could have the effect of disqualifying many would-be debtors from filing under Chapter 13. These considerations, however, cannot change the relevant provisions of the bankruptcy code, which require reversal of the bankruptcy court's decision that Schwartz is eligible for Chapter 13 relief. The court will vacate the bankruptcy court's order confirming Schwartz's reorganization plan and remand this case to the bankruptcy court.

## IV. CONCLUSION

For the reasons discussed above, IT IS ORDERED that, in Case Number 11-13161, the appeal of the bankruptcy court's "Order Granting Debtor's Objection to Claim of Pamela Liggett (Claim #14)" [Bankr. Dkt. # 97] is DISMISSED.

IT IS FURTHER ORDERED that, in Case Number 11-13160, the bankruptcy court's decision that Debtor Robert Schwartz is eligible for relief under Chapter 13 of the Bankruptcy Code is REVERSED, the bankruptcy court's "Order Confirming Plan"

[Bankr. Dkt. # 87] is VACATED, and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion.

                                              s/Robert H. Cleland
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated: March 26, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 26, 2012, by electronic and/or ordinary mail.

                                              s/Lisa Wagner
                                              Case Manager and Deputy Clerk
                                              (313) 234-5522